### JENNINGS v. LEE.

### SULLIVAN v. SAME.

(District Court, W. D. New York. June 5, 1923.)

1. **Trade unions ⬦⟹3—Provisions of constitution and rules of Brotherhood of Railroad Trainmen as to revocation of charter of subordinate lodge held valid.**

The provisions of the constitution and general rules of the Brotherhood of Railroad Trainmen, an unincorporated association of railroad employés, prohibiting members from participating in an unauthorized strike, and providing that, in case they do so, charges shall be preferred against them by the subordinate lodge of which they are members, and that on failure to prefer such charges the charter of the subordinate lodge shall be revoked, *held* reasonable and valid.

2. **Trade unions ⬦⟹7—Acts constituting "strike," within rules as to suspension of local lodge, determined.**

When a large number of the employees of a common employer quit work at about the same time, by tacit understanding, and with the intention of resuming the employment when certain demands are complied with,

─────────

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it might reasonably be determined that there was a "strike," within laws of an association providing for suspension of local lodge not preferring charges against striking members.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Strike.]

3. **Insurance ☞743—Members held not entitled to recover dues and assessments paid.**

Members of a labor association, who held benefit certificates therein, and of a subordinate lodge, the charter of which had been revoked, who were entitled under the constitution and rules of the association to apply for a transfer to another lodge which would have kept their certificates in force, but did not make such application, *held* not entitled to recover from the association the dues and assessments paid.

In Equity. Suits by Bryan T. Jennings and by George H. Sullivan against W. G. Lee, as President of the Brotherhood of Railroad Trainmen. Decrees for defendant.

Hamilton Ward, of Buffalo, N. Y. (Irving W. Cole, of Buffalo, N. Y., of counsel), for plaintiffs.

Clinton & Clinton, of Buffalo, N. Y. (George Clinton, Jr., of Buffalo, N. Y., of counsel), for defendant.

HAZEL, District Judge. The plaintiffs in the above-entitled actions, which by consent were tried together as a single case, sue in equity to recover dues and assessments amounting to $48 in the case of Jennings, and to $279.28 in the case of Sullivan, amounts they had separately paid as members of subordinate lodge No. 417 of the Brotherhood of Railroad Trainmen, an unincorporated association, and to appoint a receiver of a fund amounting to $1,180.28 in the possession of the defendant and belonging to the subordinate lodge, and to ascertain the amounts due to its members so that the fund may be distributed. The cases have been tried upon the theory that equitable relief is necessary, on the ground that the subject-matter involves a right to protection of property the value of which in the aggregate exceeds the statutory amount required to confer jurisdiction upon this court.

It appears that the defendant Brotherhood (so called for short) and its chartered subordinate lodges are organized for the benefit of railroad trainmen, carrying on the business of fraternal life insurance. Its members are governed by a constitution and general rules or by-laws providing for the Brotherhood lodge and subordinate lodges organized under its authority. Plaintiffs were members in good standing of subordinate lodge No. 417 at Buffalo, and held beneficiary certificates issued by the defendant. On May 20, 1920, they offered to pay defendant Brotherhood certain dues and assessments owing from them to continue their certificates in force, but payment was refused on the ground that the certificates issued to plaintiffs had been rescinded and canceled, and also that the charter of the subordinate lodge No. 417 had previously been revoked under the constitution and general rules (42–11), on the ground that various of its members, including plaintiffs, had incited a strike and participated therein to the knowledge of its officers and members, and plaintiffs had therefore been expelled as mem-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bers of the defendant. The constitution and rules concededly confer the right of revocation of the charter granted to subordinate lodges and of the expulsion of members for inciting a strike or engaging in an unauthorized strike. It is provided that a subordinate lodge under whose jurisdiction any illegal strike occurs shall, within 10 days thereafter, cause charges to be preferred against any and all members inciting a strike or participating therein.

Lodge No. 417, of which plaintiffs were members, was required to show cause by the president of the defendant why its charter should not be revoked for disobeying section 42 of the constitution and general rule 11, but it did not appear by any of its officers or members and show cause or excuse, defend or mitigate the asserted violation. Failure to do so subjected its charter to revocation, and the defendant did cancel and revoke its charter for disobedience and thereupon refused to continue in force the beneficiary certificates held by its members and by the plaintiffs herein. Although beneficiary membership in the Brotherhood automatically ceased on revocation of the charter of the subordinate lodge, still the constitution contained a provision for transferring members to other existing lodges on application' within 30 days from the published revocation. Plaintiffs did not avail themselves of this provision or individual right. The evidence shows that plaintiff Sullivan did not request a transference, and, though Jennings applied for a transfer, he refused to sign the blank form submitted to him under the rules and regulations, which embodied an avowal on his part that he had not participated in an illegal strike.

The principal questions involved are: (1) Whether revocation of subordinate lodge No. 417 was legal and justified by the constitution and general rules of the Brotherhood. (2) Can plaintiffs recover the dues and assessments paid by them on their certificates of insurance, without proving that the revocation of the charter of the subordinate lodge was illegal? (3) Are they not estopped from equitable relief on the ground that they and the subordinate lodge of which they were members failed to comply with the laws and rules relating, on the one hand, to preferring charges against members for participating in an illegal strike, and, on the other hand, for failure of the plaintiffs to apply as individuals for transference to another existing lodge.

I find that President Lee, of the defendant Brotherhood, was informed in April, 1920, that lodge No. 417 and various of its members participated in an unauthorized strike against their employer, and that no charges were preferred by the subordinate lodge against the members engaged in such strike; that President Lee in good faith on May 2, 1920, notified the officers of subordinate lodge No. 417 by telegram to show cause on or before May 10th why its charter should not be revoked for failure to enforce the constitution and general rules to which reference has herein been made, but that no answer was submitted to such notification, and accordingly, on May 13, 1920, he, as president of the Brotherhood, revoked the charter and so notified its officers. His action in this particular I find was within the reserved right of the defendant Brotherhood, and the rule in relation thereto was designed to discipline subordinate lodges for their violations of the laws of their organization.

[1] It was not in my opinion an unreasonable, arbitrary, or unlawful rule, even though involving revocation of charter and expulsion of members. As substantially pointed out by Judge Rogers in Re Tidewater Coal Exchange (C. C. A.) 280 Fed. 638, associations which are creatures of convention between members and have no check exist upon their right to transact their business in the manner agreed upon so long as they do not act illegally or opposed to public policy, and the regularity of proceedings and officers is presumed in the absence of a contrary showing. This presumption has not been overcome by plaintiffs. It has not been proven that there was no participation by members of the local lodge in an illegal strike. While the testimony of plaintiffs and numerous witnesses, members of lodge No. 417, disclaims that there was a strike by the New York Central Railroad trainmen in April, 1920, yet their testimony clearly shows that many trainmen and members quit work at about the same time, and refrained from working until later in April, when by unanimous action they returned to duty in a body and concertedly quit work again just prior to May 1st. There was evidence, it is true, that various members ceased working at this time and accepted other employment to better their condition, and without knowledge as to what other members were doing in relation to quitting work or intended to do. The evidence, however, in its entirety, satisfactorily shows, I think, that the quitting was by tacit agreement and there existed a general understanding in relation thereto.

[2] Counsel for plaintiffs contends that quitting or ceasing work is not in any sense a strike, as that term is ordinarily understood. I agree that the members of lodge No. 417 had the right to singly quit their employment any time, but when they quit in groups or large numbers, or in a body, by concert of action or by mutual understanding, with a view of enforcing compliance with their demands on their common employer, the railroad company, then it may reasonably be determined that there existed a strike by the trainmen and members, as that term is defined in law. It is true plaintiffs and about 40 other witnesses, members of lodge No. 417, disclaimed participating in any strike or in an agreement to strike; but their assertions in various instances are in the nature of conclusions. When the evidence is fairly considered on the subject, it is convincing upon the point that a large body of the members, about 600 workmen in all, quit their employment at substantially the same time by tacit understanding, and for the purpose of enforcing their demands upon their common employer, and, moreover, with the intention of resuming employment in groups or in a body when their demands were complied with. The plaintiff Jennings testified that he was discharged from his employment, and did not hear of a strike order by the subordinate lodge, nor did he participate in a strike; while Sullivan testified that he stopped work to better his condition and to engage in other employment, without having any understanding with any other person or persons as to quitting, or as to the existence of any strike.

[3] But, assuming such to be the fact, the plaintiffs as individuals did not avail themselves of their right under the constitution and rules of the Brotherhood to transference to another existing lodge. Com-

pliance with the imposed conditions of transfer, which were not in my opinion unreasonable or oppressive, would have continued their beneficiary certificates, regardless of the revocation of the charter of the lodge No. 417, with which they were affiliated as members. Their refusal to conform to this rule tends to negative their denials, and operated to deprive them of the benefits to which they were entitled under their certificates.

Other interposed defenses were argued, but it is unnecessary to treat of them. In my opinion, on the record presented, the material questions submitted must be resolved against the plaintiffs, and the bill is without equity, and must be dismissed, with costs.